**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

WILDEARTH GUARDIANS,

     Plaintiff,

v.

THE WESTERN SUGAR COOPERATIVE, a Colorado cooperative,

     Defendant.

_____

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**
_____

**INTRODUCTION**

1.  Plaintiff WildEarth Guardians ("Guardians" or "Plaintiff") brings this suit against the Western Sugar Cooperative ("Western Sugar" or "Defendant") pursuant to the citizen suit provision of the Federal Water Pollution Control Act, more commonly referred to as the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq*., for Defendant's past and continuing violations of the CWA.  Guardians seeks declaratory and injunctive relief, the imposition of civil penalties, and recovery of litigation expenses, including attorney fees and costs pursuant to 33 U.S.C. § 1365(d).

2.  Defendant owns and operates a sugar beet processing facility located at 18317 Highway 144 (Riverside Avenue), Fort Morgan, Colorado 80701 (the "Facility").  The Facility has been used for sugar beet processing since the 1970s.

3.   The Facility is located adjacent to both Riverside Park and the South Platte River. Riverside Park provides a 50-acre retreat for the local community of Fort Morgan as well as for those travelling through the area. The park offers more than a mile of nature trails, a disc golf course, several ball fields and courts, a pond, picnic tables, camping and a large playground. Since 2009, surveys by Audubon Colorado and several local birdwatchers have identified as many as 80 species of birds in Riverside Park.

4.   The South Platte River—from Greeley to the Nebraska state line—serves as an important corridor for migrating and wintering birds, including ducks, western grebes, American white pelicans, northern harriers, sandhill cranes, snowy plovers, American avocets, and long-billed curlews.

5.   The Facility discharges a spectrum of pollutants, most importantly fecal coliform, biochemical oxygen demand ("BOD"), and pH.  The Facility is authorized to discharge these pollutants, within certain limits, to the South Platte River from a surface water outfall (*i.e.* the Jacoby ditch) and from a number of unlined process wastewater ponds that are directly hydrologically connected to the South Platte River via discharges to the alluvial groundwater below the Facility.

6.   Discharges of pollutants are only authorized under the CWA if they meet the specific effluent limitations contained in a facility's National Pollutant Discharge Elimination System ("NPDES") permit under the CWA. The permit for Western Sugar is known as NPDES Permit and Colorado Discharge Permit System Permit No. CO0041351 ("NPDES Permit" or "Permit"). The Water Quality Control Division of the Colorado Department of

2

Public Health and the Environment ("Division") issued the Permit pursuant to state and federal law and regulations.

7. The Facility has been permitted under water quality permits from the Division since the 1970s. The present Permit became effective on March 1, 2012 and contained, for the first time, effluent limitations (or restrictions) on the concentrations of fecal coliform and BOD that the Facility can discharge.

8. Legally required Discharge Monitoring Reports ("DMRs") submitted by Western Sugar to the Division on a monthly basis pursuant to its NPDES Permit plainly admit that the Facility has repeatedly and consistently violated and is continuing to violate the requirements of its NPDES Permit and the CWA.

9. The Facility has and continues to grossly exceed its permitted limits for fecal coliform. Fecal coliform is a bacteria associated with fecal waste from humans or other animals and is used as a critical indicator of the public health risks posed by a given source of pollution. Defendant has at times discharged fecal coliform 550,000 percent over the limit in its permit meant to protect public health.

10. The Facility has and continues to grossly exceed the pollutant discharge limits legally authorized under its permit for BOD. BOD is the amount of dissolved oxygen needed by aerobic organisms in a body of water to break down organic material and is the most important limit for ensuring fish and other aquatic life have sufficient oxygen levels to survive.

11. The Facility has and continues to violate its permitted limits for pH. pH affects most chemical and biological processes in water and pH outside the range of 6.5 to 8.0 reduces

the diversity in the stream by stressing the physiological systems of most organisms and can reduce reproduction.

12. Western Sugar's NPDES Permit also requires the Facility to perform quarterly Whole Effluent Toxicity ("WET") testing to measure the aggregate toxic effect to aquatic organisms from all pollutants contained in the Facility's effluent.  Western Sugar has and continues to fail its WET tests and this constitutes a violation of the Permit.

13. Western Sugar has: (a) discharged and continues to discharge pollutants that exceed the permitted effluent limits for BOD, fecal coliform, and pH in its NPDES Permit; (b) violated the effluent limits for WET testing as required by the NPDES Permit, (c) failed to timely report violations of discharges that exceed effluent limitations and to take steps to reduce and eliminate the non-compliance; and (d) failed to properly operate and maintain all pollution treatment and control systems necessary to comply with the limits in the NPDES Permit.

14. These actions are in violation of the CWA, its implementing regulations and the terms of the NPDES Permit.

15. Defendant's CWA violations are ongoing as of the date of this Complaint and reasonably likely to continue.

16. Plaintiff seeks declaratory and injunctive relief and the imposition of civil penalties resulting from these violations.  Plaintiff also seeks an award of attorney fees and costs pursuant to 33 U.S.C. § 1365(d).

## JURISDICTION AND VENUE

17.   Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (citizen suit provision of the CWA).   This Court has subject matter jurisdiction over the claims specified in this Complaint under 33 U.S.C. § 1365(a).   The relief requested is authorized by 33 U.S.C. §§ 1319(d) and 1365(a).   An actual, justiciable controversy exists between Plaintiff and Defendants.   The requested relief is proper under 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

18.   Pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff notified Defendant of Defendant's violations of the CWA and of Plaintiff's intent to sue under the CWA by letter dated and postmarked October 17, 2013 ("Notice Letter").   Plaintiff notified the Defendant, Defendant's registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 8 and the Division Director of its intent to sue Defendant by mailing copies of the Notice Letter to these officials on October 17, 2013. Defendant received the Notice Letter on October 21, 2013.

19.   More than sixty days have passed since Plaintiff served and since Defendant received the Notice Letter.   Neither the EPA nor the Division has commenced and diligently prosecuted an action that would preclude this action under either 33 U.S.C. § 1319(g)(6) or 1365(b)(1)(B).

20.   The source of all violations complained of and the Facility are located in Fort Morgan, Colorado, which is within the District of Colorado.   Venue in the District of Colorado is

therefore proper pursuant to 28 U.S.C. 1391(b)(2) and more specifically 33 U.S.C. § 1365(c).

**PARTIES**

21. Defendant WESTERN SUGAR COOPERATIVE is a Colorado cooperative and the owner and operator of the Facility and authorized Permittee of the NPDES Permit.

22. Plaintiff WILDEARTH GUARDIANS is a 501(c)(3) non-profit, public interest conservation organization with one of its main offices in Denver, Colorado. Guardians' mission is to protect and restore wildlife, wild places, and wild rivers in the American West. This work includes protection of water quality in the rivers and streams of Colorado, such as the South Platte River.

23. Guardians uses education, advocacy and, when necessary, legal enforcement tools authorized under the federal CWA to achieve its goals.

24. Guardians has more than 43,000 members and activists, including members who live, work, and recreate in areas affected by the CWA violations described herein.

25. Guardians has members, supporters, and staff that use the South Platte River and areas affected by Defendant's illegal discharges at the Facility. Guardians' staff and members use and enjoy these areas for bird watching, hiking, nature photography, and other recreational, environmental, scientific, and vocational interests. They also participate in "river watch" activities on the South Platte River to monitor water quality and health of the river, including areas downstream of the Facility. The pollution associated with the Defendant's discharges in violation of applicable NPDES Permit limits has a negative impact on Guardians, its staff and members and their ability to enjoy those activities and

interests.  Defendant's violations of the law described herein harm the health, aesthetic, recreation, scientific, and environmental interests of Guardians' members and staff.

26.  Guardians, its staff, and members intend to continue to use these same waters and areas in the future and have specific and near-term plans to return to use such waters for the uses described above in the spring and summer of 2014.  But, ongoing pollution from the Facility also deters Guardians' members from using and enjoying such waters as they otherwise would because of reasonable and scientifically-based concerns about the adverse effects of Defendant's discharges.

27.  Additionally, Defendant's discharges adversely affect the abundance and health of aquatic and terrestrial wildlife, including birds, in waters upstream and downstream from its discharges.  This harms and reduces Guardians' members' ability to view and enjoy such wildlife for aesthetic and recreational purposes.

28.  Guardians and Guardians' members are also injured by the Defendant's failure to accurately report and provide required pollutant monitoring data and timely notice when the Facility's pollutant discharges exceed permitted effluent limits.  The timely notice required by the applicable permit provides the Division with the opportunity to notify the public, including Guardians' members, of particularly significant threats if warranted. Absent timely reporting, however, Guardians and Guardians' members are left without important information they could use to avoid areas impacted by such unpermitted discharges.  Additionally, without timely reporting, Guardians' members use of areas impacted by the Facility's discharges are degraded and adversely affected at all times of use because of uncertainty regarding whether violations are occurring or have recently

occurred that could create a particularly significant threat to human health and the environment.

29.   The instant action would redress the harms faced by Guardians and its members by requiring the Facility to reduce its pollutant discharges to levels that comply with authorized limits and to comply with all reporting requirements in its NPDES Permit.  It would result in civil penalties that would deter future violations that threaten Guardians' members' use and enjoyment of upstream and downstream waters.

30.   The foregoing are actual, concrete injuries suffered by Guardians and its members and are fairly traceable to Defendant's violations and are capable of redress by action of this Court. Guardians has no other adequate remedy at law.

## STATUTORY BACKGROUND

31.   Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  In doing so, Congress declared a national goal of eliminating discharges of pollutants to navigable waters by 1985.

32.   Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the point source discharge of pollutants to navigable waters of the United States unless the discharge is in compliance with a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

33.   "Navigable waters" are broadly defined as "the waters of the United States." 33 U.S.C. §§ 1362(7) & (14).

34.   The "discharge of a pollutant" means any "addition of a pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).  Pollutant is defined to include "industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).  The term

"point source" means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, landfill leachate collection system, vessel or other floating craft from which pollutants are or may be discharged.  33 U.S.C § 1362(7); 40 C.F.R. § 122.2.

35. The NPDES permitting scheme is the primary means by which discharges of pollutants are controlled.  NPDES permits must include conditions that will ensure compliance with the CWA.

36. Although EPA is the administrator of the CWA, section 402 of the CWA, 33 U.S.C. § 1342, authorizes EPA to delegate its authority to states to implement and administer the CWA.  33 U.S.C. § 1342(b).  In 1975, EPA delegated responsibility to administer the NPDES permit program to the State of Colorado via its Colorado Discharge Permit System.

37. CWA violators are subject to enforcement activities initiated by EPA, states, and citizens. 33 U.S.C. §§ 1319, 1365(a); 40 C.F.R. § 135.  Citizens are required to provide notice of any alleged violations sixty days prior to commencing suit.  33 U.S.C. § 1365(b).  After sixty days have passed, citizens may bring an action in federal district court to enforce against any ongoing violations of the CWA.

38. Section 505 of the CWA authorizes citizens to bring suit against any person, including a corporation or cooperative, that is alleged to be in violation of an effluent standard or limitation under the CWA.  33 U.S.C. § 1365(a).  Effluent limitation is defined broadly to

include "any unlawful act under subsection (a) of [section 301] of this title."  33 U.S.C. § 1365(f).

39.   CWA violators are subject to a civil penalty not to exceed $37,500 per day per violation of the Act.  See 33 U.S.C. § 1319(d) (civil penalties); 40 C.F.R. § 19.4 (adjusting the amount for inflation).

## STATEMENT OF FACTS

### A. Background

40.   The Western Sugar Cooperative owns and operates a sugar beet processing facility on the banks of the South Platte River in Fort Morgan, Colorado.

41.   The Facility is located at facility located at 18317 Highway 144 (Riverside Ave.), Fort Morgan, Colorado, 80701.

42.   The Facility typically operates 6 months a year from September through March.  During that time, the Facility is in production 24 hours per day, 7 days per week and has a maximum production rate of 1,500,000 pounds of sugar per day.

43.   The Facility discharges approximately 2-5 million gallons of wastewater per day into on site ponds.

44.   The Facility discharges wastewater into five separate on-site ponds at the Facility.  None of the ponds are lined, and due to water rights agreements with the Office of the State Engineer, the ponds on-site must be allowed to seep into the groundwater under the Facility.

45.   The groundwater underneath the Facility is hydrologically connected to the South Platte River.

46.  There is a significant biological, chemical and physical nexus between the groundwater and the South Platte River.

47.  The Facility has a lengthy history with the Division dating back to 1986 and throughout this period the Facility has repeatedly avoided installation of modern pollution controls that would make its discharges consistent with the protection of public health and aquatic resource protection.

48.  In 1974, the EPA established effluent limitations guidelines for the sugar beet processing industrial subcategory requiring the Facility to comply with fecal coliform and BOD effluent limitations.

49.  On March 1, 2012, the Division issued Western Sugar its most recent NPDES Permit which, for the first time, contained effluent limitations for fecal coliform and BOD as required by the EPA's 1974 effluent limitations guidelines.  The Permit became effective on March 1, 2012 and expires on February 28, 2017.  This Permit required, also for the first time, Western Sugar to sample, monitor and report their fecal coliform and BOD discharges to the Division.

50.  At the same time, on February 28, 2012, Western Sugar and the Division entered into a Compliance Order on Consent ("Consent Order") whereby the Division agreed to not to initiate any enforcement and to effectively defer compliance for all violations of the fecal coliform and BOD effluent limitations in the NPDES Permit until December 1, 2016, despite the fact that the effluent limitations became effective on March 1, 2012.

51.   The Consent Order did not contain any penalty provision for past, present or future effluent limitation violations despite the fact that the Facility had been regularly and significantly exceeding its NPDES Permit limits.

52.   The Consent Order is not and has not been sufficient or effective at stopping the ongoing violations at the Facility.

53.   The Facility's NPDES Permit limits the quantity of fecal coliform, BOD, and pH in the Facility's discharges.

54.   The Facility consistently discharges wastewater that exceeds Permit limits for concentrations of fecal coliform, BOD, and pH.

55.   Discharges of wastewater with high levels of fecal coliform, BOD and pH indicate the presence of pathogens in the water and present a threat to humans, aquatic species, and the environment.

56.   Defendant is a "person" within the meaning of § 301(a) of the CWA, 33 U.S.C. § 1311(a) and is subject to suit under the CWA's citizen suit provision, 33 U.S.C. § 1365.

57.   The Facility includes one or more discrete conveyances that fall within the definition of a "point source" under the CWA, 33 U.S.C. § 1362(14), including the unlined process wastewater ponds that are hydrologically connected to the South Platte River and which are collectively described in the Permit as Outfall 006-A and including the Jacoby Ditch, a tributary of the South Platte River, described in the Permit as Outfall 001A.

58.   Defendant discharges "pollutants," as that term is defined in the CWA, including fecal coliform, BOD, and pH, through Outfall 006-A, and via the groundwater under the Facility, into the South Platte River.

59.   The South Platte River is a water of the United States as defined by 33 U.S.C. §§ 1311(a), 1362(7) and 40 C.F.R. § 230.3(s)(5).

**B.  Western Sugar's Violations of the Effluent Limitations in its NPDES Permit**

60.   Defendant has violated and continues to violate various conditions of its NPDES Permit, as explained below.

61.   Defendant has violated and continues to violate the effluent limitation in its NPDES Permit for fecal coliform at Outfall 006-A.

62.   The NPDES Permit limit for fecal coliform is a monthly average of 400 colonies per 100/ml and a daily maximum of 400 colonies per 100/ml.

63.   Pursuant to the Permit, Defendant submits monthly Discharge Monitoring Reports ("DMRs") to the Division which report the results of samples taken two times per week for fecal coliform and BOD.  The Permit requires the Facility to sample for pH daily.

64.   Defendant has violated this NPDES Permit condition on the following dates and in the following amounts for fecal coliform identified in paragraph 65 and 66 and self-reported by Defendant in its DMRs submitted to the Division.

65.

| Effluent limitation: Fecal Coliform Daily Max:  400 colonies per 100/ml | | |
| --- | --- | --- |
| Last day of reporting period | Reported discharge value (#100/ml) | Number of violations |
| 3/31/2012 | 31,724 | 6 |
| 9/30/2012 | 69,700 | 2 |

| 10/31/2012 | 241,920 | 7 |
| 11/30/2012 | 387,300 | 5 |
| 12/31/2012 | 816,400 | 1 |
| 1/31/2012 | 1800 | 2 |
| 2/28/2013 | 8840 | 5 |
| 3/31/2013 | 5040 | 2 |
| 9/30/2013 | 900 | 1 |
| 10/31/2013 | 7000 | 3 |
| 11/30/2013 | 1,100,000 | 8 |
| 12/31/2013 | 300,000 | 6 |
| 1/31/2014 | 2,200,000 | 7 |

66.

| **Effluent limitation: Fecal Coliform** <br> **Monthly Average:  400 colonies per 100/ml** | | |
|---|---|---|
| **Last day of reporting period** | **Reported discharge value (#100/ml)** | **Number of violations** |
| 3/31/2012 | 1195 | 6 |
| 9/30/2012 | 1578 | 2 |
| 10/31/2012 | 3085 | 7 |
| 11/30/2012 | 777 | 5 |
| 2/28/2013 | 449 | 5 |
| 11/30/2013 | 25,650 | 8 |

| 12/31/2013 | 2,781 | 6 |
| 1/31/2014 | 40,326 | 7 |

67. Defendant has also violated and continues to violate the effluent limitation in its NPDES Permit for BOD at Outfall 006-A. The NPDES Permit limit for BOD is a daily maximum of 4,950 pounds/day and a monthly average of 3,300 pounds/day.  Defendant has violated this NPDES Permit condition on the following dates and in the following amounts for BOD as identified in paragraph 68 and 69.

68.

| **Effluent limitation: BOD**<br>**Daily Max:  4,950 lbs/day** | | |
|---|---|---|
| **Last day of reporting period** | **Reported discharge value (lbs/day)** | **Number of violations** |
| 3/31/2012 | 76,096 | 1 |
| 9/30/2012 | 48,774 | 4 |
| 10/31/2012 | 97,098 | 8 |
| 11/30/2012 | 65,152 | 7 |
| 12/31/2012 | 24,623 | 5 |
| 1/31/2012 | 16,108 | 4 |
| 2/28/31 | 25,355 | 3 |
| 10/31/2013 | 156,745 | 5 |
| 11/30/2013 | 39,381 | 7 |
| 12/31/2013 | 181,195 | 9 |

| 1/31/2014 | 44,476 | 9 |
|---|---|---|

69.

| Effluent limitation: BOD Monthly Average: 3,300 lbs/day | | |
|---|---|---|
| **Last day of reporting period** | **Reported discharge value (#100/ml)** | **Number of violations** |
| 3/31/2012 | 12,559 | 1 |
| 9/30/2012 | 16,583 | 4 |
| 10/31/2012 | 25, 986 | 8 |
| 11/30/2012 | 10,402 | 7 |
| 12/31/2012 | 3647 | 5 |
| 1/31/2012 | 3647 | 4 |
| 2/28/2013 | 3785 | 3 |
| 10/31/2013 | 24,951 | 3 |
| 11/30/2013 | 13,023 | 8 |
| 12/31/2013 | 45,244 | 9 |
| 1/31/2014 | 19,513 | 9 |

70.   Defendant has also violated and continues to violate the effluent limitation in its NPDES

Permit for pH at Outfall 006-A as well as the other identified outfalls below. The NPDES

Permit limit for pH is a daily maximum of either 8.5 or 9 and a daily minimum of 6.5.

Defendant has violated this NPDES Permit condition on the following dates and in the

following amounts for pH as identified in paragraph 71.

71.

| Permit Limits for Outfall 006-A: Daily Max 9 and Daily Min 6.5 | | |
|---|---|---|
| Last day of reporting period | Reported Effluent (su) | Exceedances per Month |
| 9/30/2012 | 10 | 1 |
| 11/30/2012 | 9.8 | 2 |
| 12/31/2012 | 10 | 1 |

72.   Defendant has violated and continues to violate the effluent limitation in its NPDES Permit for fecal coliform, BOD, and pH.

73.   Western Sugar's NPDES Permit also requires the Facility to conduct Whole Effluent Toxicity ("WET") tests to measure the aggregate toxic effect to aquatic organisms from all pollutants contained in the Facility's effluent.   At certain levels designated in the Permit, WET test failures are a violation of the Permit.   Western Sugar's WET tests violated the limitations in the Permit in September 2012 for *Ceriodaphnia Dubia (*water flea) and *Pimephales Promelas* (fathead minnow).

**C. Monitoring and Reporting Violations**

74.  Western Sugar's NPDES Permit at Part II.D. requires that any permit noncompliance "which may endanger health or the environment" must be reported to the Division orally within 24 hours and in writing within 5 days from any violation.   Western Sugar's fecal coliform violations described above pose a significant threat to human health and the environment. Western Sugar did not comply with these reporting requirements for any fecal coliform noncompliance.   Each time Western Sugar failed to timely report these violations represents

17

a distinct violation of its NPDES Permit and, thus, a violation of Section 301(a) of the CWA, 33 U.S.C. § 1311, and its implementing regulations, 40 C.F.R. § 122.41(a), which prohibit violation of this NPDES Permit. These types of reporting violations are of a continuing nature and are in addition to the underlying effluent discharge violations.

**D. Failure to properly operate and maintain**

75. Western Sugar has also violated and continues to violate the conditions in its NPDES Permit by failing to properly operate and maintain all pollution treatment and control facilities and systems that are necessary to comply with the effluent limits in the NPDES Permit.

76. The regular and consistent effluent limit violations at the Facility demonstrate that it is not being properly operated and maintained.

77. The failure to operate and maintain the Facility is a consistent and ongoing violation and each day that illegal discharges have occurred at the Facility constitutes a separate and distinct violation from March 2012 to the present. These dates include, but are not limited to, all of the violations listed in Paragraphs 65-71.

78. Western Sugar benefited economically as a consequence of the effluent limitation violations.

79. Defendant has avoided the costs associated with installing the proper operation controls to avoid violations as required of all sugar beet processors.

80. These costs include, but are not limited to, hiring consultants, fees associated with installation, implementing Best Management Practices to comply with its NPDES Permit, purchasing and maintaining technology to comply with its NPDES Permit, and altering business practices to control the sources of pollution restricted by its NPDES Permit.

**FIRST CLAIM FOR RELIEF**
**Discharge of Pollutants in Violation of Terms of NPDES Permit**
**(Violations of 33 U.S.C. Sections 1311(a))**

81. Plaintiff incorporates and re-alleges all preceding paragraphs.

82. Defendant's violation of the pollutant effluent limits contained in its NPDES Permit constitute violations of 301(a) of the CWA, 33 U.S.C. § 1311(a) and regulations implementing the CWA, including 40 C.F.R. § 122.41(a).

83. These violations include but are not limited to exceedances of the NPDES Permit's numeric effluent limits for fecal coliform, BOD, and pH, failure of WET tests, and the failure to properly operate and maintain pollution control and reduction equipment at the Facility by choosing to ignore the requirements of the NPDES Permit by consistently violating the terms of the Permit.

84. As defined by the CWA, Defendant is a "person" responsible for discharging "pollutants" from a "point source" into the "waters of the United States" in violation of the "effluent limitations" contained in the applicable NPDES Permit.  33 U.S.C. § 1362.

85. Each day of violation constitutes a separate and distinct violation under the CWA.

86. These violations are ongoing and there is more than a reasonable likelihood that they will recur and a realistic prospect they will continue absent redress from this Court.

**SECOND CLAIM FOR RELIEF**
**Violation of Reporting Requirements in Violation of Terms of NPDES Permit**
**(Violations of 33 U.S.C. § 1311(a))**

87. Plaintiff incorporates and re-alleges all preceding paragraphs.

88. Defendant has repeatedly failed to submit pollution monitoring reports and other notifications to the Division required by its NPDES Permit within the timelines the permit

requires.  These failures and NPDES Permit violations are in violation of 301(a) of the CWA, 33 U.S.C. § 1311(a), and regulations implementing the CWA at 40 C.F.R. § 122.41(a).

89.  Defendant's failure to accurately report exceedances and sampling data results as required by their NPDES Permit constitute permit violations and thus violations of 301(a) of the CWA, 33 U.S.C. § 1311(a) and its implementing regulations.

90.  Each day of violation constitutes a separate and distinct violation under the CWA.

91.  These violations are ongoing and there is a reasonable likelihood they will recur and a realistic prospect that they will continue absent redress from this Court

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

A.  Declare that Defendant has violated and continues to be in violation of its NPDES Permit and Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342;

B.  Order Defendant to take specific actions to remediate the past and future environmental harm caused by its violations;

C.  Enjoin Defendant from further violations of the terms of its NPDES Permit;

D.  Retain jurisdiction over this matter until such time as Defendant has come into compliance with the prohibitions, terms, and conditions of its NPDES Permit and the CWA;

E.  Enter a money judgment imposing maximum civil penalties against Defendant for violations of the CWA in the amount of $37,500 per day per violation for 456 violations pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. § 1319(d), and 1365(a), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. Part 19;

F.    Award Plaintiff its litigation expenses, including reasonable attorneys' and expert witness

       fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

G.    Grant such other relief as this Court deems appropriate.


DATED this 29th day of May 2014.

                                                          Respectfully submitted,

                                                           /s/  Ashley Wilmes
                                                          Ashley Wilmes
                                                          WildEarth Guardians
                                                          CO Bar #40798
                                                          680 W. Hickory Street
                                                          Louisville, CO 80027
                                                          Tel. (859) 312-4162
                                                          awilmes@wildearthguardians.org

                                                          /s/ R. Scott Jerger
                                                          R. Scott Jerger
                                                          Field Jerger LLP
                                                          Oregon State Bar No. 02337
                                                          Email: scott@fieldjerger.com
                                                          Field Jerger LLP
                                                          621 SW Morrison, Ste. 1225
                                                          Portland, OR 97205
                                                          Tel: (503) 228-9115
                                                          Fax: (503) 225-0276

                                                          Attorneys for WildEarth Guardians